IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **SPENCER P. HUDSON,** | * | |
| Plaintiff, | * | |
| v. | * | Civil No. PJM 13-1193 |
| **PENNY PRITZKER,** *Secretary of the United States Department of Commerce* | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

Spencer P. Hudson, *pro se*, has brought claims against Penny Pritzker, the Secretary of the United States Department of Commerce (the "Agency"),[1] as a result of his removal as a Logistics Management Specialist from a division of the National Weather Service ("NWS") within the Agency. Although the Complaint contains no numbered counts, from all appearances it is an appeal of the decision of the Merit Systems Protection Board ("MSPB") sustaining the Agency's decision to remove him. Hudson also alleges that the Agency discriminated against him on the basis of race and in retaliation for his filing Equal Employment Opportunity ("EEO") complaints. Pritzker has moved to dismiss or, in the alternative, for summary judgment. For the reasons stated below, Pritzker's Motion to Dismiss or in the Alternative for Summary Judgment (Paper No. 22) will be **GRANTED**.

**I.**

**A.**

Hudson began working as a Logistics Management Specialist, GS-13, within the NWS, located in Silver Spring, Maryland, in November 2005. In September 2010, he was suspended

---

[1] The proper defendant in an employment discrimination action brought by a federal employee against an agency is "the head of the department, agency, or unit." 42 U.S.C. § 2000e-16(c).

for seven days for threatening a co-worker and shouting obscenities, as well as for failing to attend a scheduled meeting. Def.'s Mot. at Ex. 1, Tab 4S at 11 (Agency Response Record). In October 2010, Hudson's first-level supervisor, Eric Parr, noticed that several shipments on the Agency's FedEx account appeared to be unrelated to business purposes. *Id.*, Tab 4l at 9. Specifically, several shipments were sent to Hudson's home address and others were to addresses with which NWS had no relationship.

Accordingly, on October 6 and 7, 2010, Parr inspected three packages, in the presence of a witness, waiting to be shipped on the Agency account but addressed to Hudson personally. *Id.* Each package contained articles of clothing, including shorts, jeans, shirts, a rain jacket, and a pair of sweat pants. *Id.* When confronted, Hudson acknowledged using the Agency's FedEx account when he was away from the office on business so as to minimize luggage. He claimed that the October 6–7, 2010 packages were sent because he had packed 800 pages of work-related documents in his personal luggage, leaving no space for clothing. *Id.* at 10. He could not produce, however, any of these 800 pages of documents. On November 10, 2010, Parr issued Hudson a Notice of Proposed Removal ("NPR I"), charging Hudson with 29 instances of Misuse of Government FedEx Account, from August 31, 2009 to October 7, 2010. *Id.*, Tab 4q.

Along with the issuance of NPR I, Hudson was placed on administrative leave and instructed to return his government-issued laptop. The Agency reviewed that laptop as well as his government desktop computer for any further evidence of misconduct, ultimately discovering pornographic images on the desktop and referring the matter to the Office of Inspector General ("OIG"). *Id.*, Tab 4m. OIG conducted its own forensic investigation of Hudson's government-issued computers. OIG Agent John Pizzurro issued a report that concluded Hudson's desktop contained 601 images of adult pornography. *Id.*

Following Agent Pizzurro's report, on March 23, 2011, Parr issued a second Notice of Proposed Removal ("NPR II"). *Id.*, Tab 41 at 1. NPR II replaced NPR I, and charged Hudson with (1) Misuse of Government Property (IT Resources); and (2) Misuse of Government Property (FedEx Account). *Id.* The matter was referred to Hudson's second-level supervisor, Deirdre Jones, Director of the Operations Division of NWS.

On April 20, 2011, Hudson filed a written response to NPR II. *Id.*, Tab 4e. He argued that the pornographic materials were not "accessed, searched for, browsed for, navigated to, requested or received due to any internet keyword search, browse, keystroke, entered computer command or act of navigations initiated by me or by anyone on my behalf using any government issued resources." *Id.* at 2–6. Rather, Hudson suggested all of the pornographic material came as "unknown file attachments to electronic mail transmissions received unrequested and unsolicited." *Id.* With respect to use of the FedEx account, Hudson argued that he was authorized to use the account and that his shipments contained work-related materials. *Id.* at 8–21.

On May 4, 2011, Jones issued her decision to remove Hudson from employment. *Id.*, Tab 4d. She stated that she did not find Hudson's assertions credible, and that either charge against him—standing alone—would justify removal. Jones noted further that, among other things, (1) the nexus between Hudson's job responsibilities and his misconduct; (2) the repeated and intentional nature of his misconduct; (3) his prior suspension in September 2010; and (4) the improbability of his rehabilitation all justified his removal. *Id.*

**B.**

Hudson attacked his removal through separate avenues. On June 3, 2011, he filed an appeal to the MSPB, asserting as defenses that the removal was a result of: (1) retaliation for

prior EEO activity;[2] (2) race discrimination; (3) whistleblower retaliation; and (4) prohibited personnel practices. *Id.* at Ex. 2 (MSPB Appeal dated June 3, 2011).  On June 14, 2011, Hudson also filed a complaint of discrimination, asserting essentially the same claims but also suggesting that his removal was the result of harmful procedural error. *Id.* at Ex. 3 (Initial MSPB Decision dated May 26, 2012).  Specifically, he alleged that the Agency failed to provide him with the evidence on which it based its removal decision. *Id.* at 16.

Administrative Law Judge Anthony W. Cummings held a two-day hearing on March 19 and 20, 2012, regarding Hudson's appeal.  After reviewing the evidence and hearing testimony from several Agency employees,[3] ALJ Cummings sustained Hudson's removal.  *See id.*  He concluded that removal was reasonable and that the Agency had established a nexus between the misconduct and the efficiency of the service. *Id.* at 11–12.  In reaching his decision, ALJ Cummings rejected each of Hudson's affirmative defenses, concluding that Hudson "failed to establish evidence giving rise to an inference that the agency's removal action was due to illegal discrimination." *Id.* at 14.  He also found that Hudson had failed to identify a protected disclosure that would have led to whistleblower retaliation. *Id.* at 15.  Further, ALJ Cummings found decision-maker Jones's testimony "credible and undisputed" that Hudson's prior EEO activity was unknown to Jones until late in the process and ultimately did not influence her decision.  Finally, ALJ Cummings found Jones's testimony credible that the Agency had in fact provided Hudson with the evidence upon which it relied in removing Hudson. *Id.* at 16.

---

[2] Hudson first contacted an EEO counselor on September 23, 2010, following his return from 7-day suspension.  He did not file a formal complaint until November 16, 2010.  The complaint was assigned to EEOC Administrative Law Judge Laurence Gallagher.  Following written submissions from Hudson and the Agency, ALJ Gallagher entered judgment in favor of the Agency.  *See* Def.'s Mot. Ex. 16 (Final Order Dated August 13, 2012).  Hudson did not file an appeal with the Office of Federal Operations within the 30-day deadline for appeals, nor did he file a civil action within the 90-day deadline to do so.

[3] Hudson chose not to testify on his behalf at the hearing.  He did call, however, one witness in support of his case.

On June 19, 2012, Hudson filed a petition for review of the Initial MSPB Decision. *See* Def.'s Mot. Ex. 5. On March 22, 2013, the MSPB issued its Final Order dismissing Hudson's petition and affirming the Initial Decision as the final order. *See id.* at Ex. 7 (MSPB Final Order). This Complaint followed on April 22, 2013.

## II.

Typically, appeals of MSPB decisions are heard in the Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703(b)(1). If, however, the appeal involves both nondiscrimination claims and Title VII discrimination claims, that appeal may be heard in the appropriate U.S. district court. 5 U.S.C. § 7703(b)(2); 42 U.S.C. § 2000e-5; *see also* 29 C.F.R. 1614.302(a)(2) (describing "mixed case" appeals). In such "mixed case" appeals, the court reviews the discrimination claims *de novo* and the nondiscrimination claims under an "arbitrary and capricious" standard. The burden is on the appellant to demonstrate arbitrariness or capriciousness, procedural impropriety, or lack of substantial evidence. *Rupert v. Green*, 605 F. Supp. 2d 705, 713 (D. Md. 2009) (citing *Harris v. Dep't of Vet. Aff.*, 142 F.3d 1463 (Fed. Cir. 1988)). That means the appellant must show that MSPB's actions are "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Frederick v. Dep't of Justice*, 73 F.3d 349, 352 (Fed. Cir. 1996).

Since the Court is considering matters outside the pleadings, Pritzker's motion will be treated as one for summary judgment. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  This does not mean, however, that "*some* alleged factual dispute between the parties" defeats the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (emphasis in original).  Rather, "the requirement is that there be no *genuine* issue of *material* fact." *Id.*  Further, "[a] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (internal quotation and citation omitted).

Additionally, although federal courts must liberally construe a *pro se* litigant's claims, this requirement "does not transform the court into an advocate." *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012).  The court need not ignore a failure to allege facts which set forth a cognizable claim for relief.  *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

### III.

Hudson's Complaint and opposition to the Motion for Summary Judgment reprise many of the arguments he raised before the MSPB.  He alleges that the Agency's removal was a result of racial discrimination and in retaliation for his prior EEO activity in violation of Title VII.  Compl. at 7–8.  Hudson claims that Jones and Peggy Morse, another Agency employee, violated 5 U.S.C. § 7513 by refusing to provide him with the materials relied upon in making the decision to remove him.  *Id.* at 7.  Further, Hudson alleges that several Agency employees—Parr, Jones, Morse, and Alphonse Wissman—provided false testimony regarding the events, the handling of evidence, and the conduct leading to his removal.  *Id.* at 8; 9–11.

With respect to the nondiscrimination claims, *i.e.*, improper removal, whistleblower retaliation, and procedural error, Pritzker argues that Hudson has failed to provide any factual basis in his Complaint on which the court could conclude that the MSPB's actions were arbitrary and capricious. In any event, Pritzker argues that the Administrative Law Judge's decision sustaining removal was based on substantial evidence. This evidence, including testimony from several Agency employees as well as OIG Agent Pizzurro regarding his forensic investigation of Hudson's computers, supported the two charges for Misuse of Government Property (IT Resources) and Misuse of Government Property (FedEx Account). The Administrative Law Judge also credited Jones's testimony that she had provided Hudson with the materials relied upon in making her removal decision, whereas Hudson refused to testify and dispute Jones's contention. Finally, Hudson failed to present any protected disclosure to the Administrative Law Judge that could have led him to conclude Hudson's removal was the result of whistleblower retaliation. Accordingly, the appeal should be denied.

With respect to the discrimination claims, Pritzker argues that Hudson has not established a *prima facie* case for discrimination or retaliation, nor has he even plausibly alleged a claim for either. *See McDonell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). That is, Hudson has not alleged that his job performance was satisfactory at the time of his discharge, nor has he alleged that he was treated differently than someone similarly situated outside of his protected class. Even if Hudson could establish a *prima facie* case of racial discrimination or retaliation, Pritzker argues, the Agency had legitimate, non-discriminatory reasons for his removal— namely, using an Agency account to ship personal items and storing pornographic materials on a government computer. Hudson, says Pritzker, cannot show that the offered reasons were pretext for intentional discrimination or retaliation.

**IV.**

The Court agrees with Pritzker.

Hudson's Complaint is rife with conclusory, incredible allegations that everyone involved with his removal lied about his underlying conduct justifying the removal, lied about the chain of custody of the evidence presented against him, and lied about whether or not he was provided with the materials the Agency relied upon in deciding to remove him from employment. Hudson's bare assertions come nowhere close to showing that the Administrative Law Judge acted arbitrarily or capriciously, nor are they enough to establish a *prima facie* case of discrimination—much less a plausible claim of discrimination.

Beyond the allegations that everyone involved lied about what occurred, Hudson submits that his removal was in retaliation for his EEO activity, which occurred around the same time in 2010 as the initial NPR. There is no basis in law or fact to justify this assertion, nor does it make any difference in any event. The Agency clearly had legitimate, non-discriminatory reasons for Hudson (*i.e.*, repeated misuse of government resources), and Hudson has not begun to show that those reasons were mere pretext for retaliation.[4]

The Court notes further that Hudson has suggested that his removal occurred without due process. Not so; the record shows that Hudson has been afforded process at every turn. From Jones's initial decision to remove him, to Hudson's appeal to the MSPB and his subsequent petition for review of the MSPB's Initial Decision, as well as two separate EEO Complaints, Hudson had more than ample opportunity to present his side of the story as well as any evidence in support. In each instance his version of events was found lacking. The fact that his arguments

---

[4] To the extent Hudson may have attempted to plead other causes of action, they are not cognizable. Hudson may not bring a claim for defamation against the Agency, as the Agency has not waived sovereign immunity with respect to that claim. *See* 28 U.S.C. § 2680(h). Additionally, Hudson lacks standing to bring criminal claims under 18 U.S.C. § 1001 against Agency employees for allegedly making false statements.

were rejected does not mean that Hudson was deprived of due process, only that he was not believed.

For the foregoing reasons, Pritzker's Motion to Dismiss or in the Alternative for Summary Judgment (Paper No. 24) is **GRANTED**.

A separate Order will issue.

                                                  /s/
                          **PETER J. MESSITTE**
                    **UNITED STATES DISTRICT JUDGE**

**May 8, 2015**